May it please the court. My name is Rocky Cole and I represent the petitioner Robert Paulson. Before we get into the underlying issue, I would like to take this court on a brief tour through the facts and the direct appeal procedure. Even for a sexual abuse case, which by definition involves a degree of imprecision, this case is a paradigmatic example of what can happen when you have a spurned ex-wife. Mr. Paulson, the habeas petitioner, is doing a 25-year prison sentence based upon an allegation by his daughter that he touched her in the wrong spot. Even 14 years after the fact, as I point out in the brief, it is still not clear to me what in fact he was accused of even doing. I mean, obviously it's a sex act, but without getting into all the particulars, that was never described. The other interesting thing about this case is that that was the fifth one that had been made. His ex-wife, during divorce proceedings, had made four previous allegations. A state divorce court had heard that and made the determination that this was essentially a motive based upon trying to get the kids and that he was in fact the responsible father. On the fifth one, it stuck. So on direct appeal, the Iowa Court of Appeals, looking at this record, made a very strong finding in my view. They said that there's actual credible evidence in the record to show that this child was coerced into making these statements or that the offending conduct was non-sexual. And giving as an appellate court should do, saying, well, the jury essentially had resolved these one way or the other, and they resolved it against them, so we're not going to disturb the jury's verdict. So that was the factual and procedural posture that the state post-conviction court was presented with during post-conviction proceedings. Mr. Paulson made an argument during post-conviction, which the state post-conviction court agreed with the first part of his argument, which was that his trial attorney rendered ineffective counsel based upon his failure to object to inadmissible, irrelevant, prior bad acts evidence, which was to wit that in fact he forced upon himself, and then there were some other allegations relating improper sexual activity. The state post-conviction court agreed as a matter of Iowa law that this evidence was inadmissible. The state post-conviction court also made the determination that in fact this evidence should not have been admitted, and that the state trial lawyer likely was ineffective based upon his failure to object. And then getting to the prejudice allegation which arose in the first appeal that we had, essentially he said that you failed to prove by a preponderance of the evidence that in fact this would have changed the outcome of the proceeding. Now that was the key issue on the first appeal that we did before this court when we got into, well, was that just shorthand for that you have to prove up the facts by a preponderance of the evidence, or were you getting into the underlying description of the Strickland prejudice prong which was dealt with in Williams v. Taylor. This court was quite clear in that first decision, although not explicitly holding it, they were strongly suggesting it, that in fact this was not shorthand. The way that it was written, they were talking about prejudice as preponderance of the evidence. What's the evidentiary standard in your mind for proving a reasonable probability that but for counsel's unprofessional error, the result would not have been the same? Some evidence, preponderance, clearly not proof beyond a reasonable doubt, but there has to be some standard, right? Yes, and it comes right out of Strickland, which is but for counsel's ineffectiveness, there's a reasonable probability that the outcome of the proceeding would have been different, Your Honor. And the point in point here is that was lower than a preponderance of the evidence standard. And so the standard that was used was incorrect. Are there any cases that have dealt with this problem, that this reasonable probability standard is a lower standard than a preponderance? Yes, Your Honor, and that's what you always love to be able to quote directly out of the United States Supreme Court. Justice O'Connor, in the case of Williams v. Taylor, was talking about what an unreasonable application of federal law was. In fact, she was talking about what would be a contrary application of federal law for purposes of habeas. And she used a very specific example. She said, for example, if, in fact, the state court were to say that Strickland prejudice was by a preponderance of the evidence, that would be contrary to Strickland v. Washington. The point she was making is that that's lower than the preponderance of the evidence standard. So in this case, the important point is that allows the de novo review for this court to determine what the impact of that evidence would be. Now, you are sitting in federal habeas, and you then are required to follow the state court factual determinations in terms of how that evidence was characterized in the state courts as a matter of comity and deference. In the state court, the state post-conviction court rejected it, citing the wrong standard. But in terms of how they described this past sexual activity, they described it as sexually violent activity. And so when you look at this record, and I pointed at the court in essentially the Bolander case, where if you're confronted with a record where you have two permissible inferences, one reasonable point towards an acquittal and the other reasonable point towards conviction. In the Bolander case, they found that, in fact, that was sufficient then to grant, back to your question, Judge Beam, that if you have inadmissible evidence that comes into record, and that's the procedural posture, one could point in acquittal, one could point towards a conviction, and inadmissible evidence comes in, that's precisely the type of evidence that then would warrant habeas relief. So in this particular court, as you go back and deliberate on this, we have a world in which we have one allegation of sexual activity based upon being touched in the wrong spot. And you look at the state case law in terms of how they treat this, especially in the context of improper sex acts. The State v. Casanata case, in terms of how the state courts treat this, is that there's a strong likelihood that the juries, when they're looking at these past bad acts, are then going to use, and that was actually the concern that even the state post-conviction court talked about, that they use this prior inadmissible evidence to show that if he acted improperly in one instance, he acted improperly in this case. And that was central, Your Honor. I don't think that this was sort of a flippant remark by the prosecutor. That was central to trying to get a conviction here. Because the other part of this case that you had is you really had, you know, there's the case, the story of the Tale of Two Cities. It's really two divergent worlds in terms of the evidence. And the people that testified in Mr. Paulson's behalf, you know, it was not mom and dad and, you know, Bob could never do wrong. It was actually mandatory reporters. I mean, Bob Paulson presented pediatrician, no evidence of sexual abuse, a psychologist, no evidence of sexual abuse, daycare providers, no evidence of sexual abuse. He presented the district court family law court that talks about that these allegations were unfounded. Before we get too carried away, he did admit to sharing with the child and other acts at the time. A police officer said he confessed to inappropriate touching and kissing with the very victim here. And, of course, you're aware of what the ex-wife, the babysitter, the ex-girlfriend testified about. The inappropriate, I think if you look precisely at the record on that, he did not admit to inappropriately touching him, touching the child. What the allegation was is that they said, well, who would have done this? And then in the context, he said, if I'm sure it would be me based upon the four, you know, essentially there had been the four previous allegations that had been made. This was not the first time this had happened, and there wasn't any allegation that anyone else had done this, and that's how that arose. In terms of the inappropriate kissing, that gets into the circumstantial nature of this particular case. And you also get to the state's burden of proof on this case. Yes, we're dealing with a child. Yes, you don't want robust cross-examination. And, yes, there has to be some deference to the nature of the age in terms of what their cognition is. But even along those lines, there was no evidence as to how this actually happened, and that was a critical failure. That's how the case was presented. They talked about rubbing and rubbing going lower and lower, right? All that was was that was during this back rub that supposedly occurred, and that was brought up by Heidi Butters, which to me, that's not the type of conduct you're looking at, a 25-year sentence. That was the allegation by Heidi Butters, who herself had been, had a family member that was victimized by sexual abuse. And in that particular case, you're talking about a daycare provider, the allegation that he kept on going lower and lower, and then she witnessed him, and then she was sort of shocked. I don't think anyone would argue that that's what he's doing, a 25-year prison sentence for sexual abuse at a daycare provider, based upon, for lack of a better term, sort of the sexualized back rub. So, but don't forget what the inadmissible evidence was. This was characterized – I'm sorry, Your Honor. Let's go back to the inadmissible evidence. What was the cross-examination of this witness with this evidence? I mean, this just stood unrebutted. If the issue was that she was a wife scorned that was in here lying, and so ladies and gentlemen of the jury don't believe her, was that part and parcel of this presentation? You were just taking as given here that because some of these courts along the way said this was inadmissible, and ordinarily it might be, but we don't know that there wasn't some – if you say that she testified in the divorce and the fact finders found that she was wanting in credibility, are you telling us that that wasn't any facet of this case? It was not, and I direct the Court's attention to page 16 of my brief. There I get into the reasons the trial counsel gave for not objecting. Okay, well, I read that. And it did not come up in cross-examination because – and if you look at what the lawyer said, he said, I just thought the jury would be able to sort this stuff out in closing argument. And he also admitted that, in fact, it was irrelevant. I mean, it was that statement that kind of made me think that there was something that wasn't in the record here or that he had cross-examined her sufficiently that the jury was going to figure out she was a liar or whatever. He did bring up the question of the past sexual allegations, but I think in terms of what the issue was is on direct examination this is where the information was elicited and that he failed to object. The state courts agreed as a matter of state law that he should have objected. Well, I felt maybe in your brief that you had picked and chosen what you were presenting here, but go ahead. Well, and I'm sorry, I wasn't intending to, Your Honor, but I think what that gets into is that he did not address this and try to rehabilitate the testimony because he didn't consider it apparently that big a deal. He didn't realize the magnitude of the sexually violent conduct, and that goes to the heart of the ineffectiveness. Thank you, Mr. Coe. Mr. Smelik. May it please the Court. My name is Kevin Smelik. I'm with the Iowa Attorney General's Office, and I represent the respondent in this case. I'd like to begin in the beginning with Strickland and highlight what Strickland said and what Harrington emphasized and what the judge found in this particular case, and that is that the difference between the more likely than not standard that had existed before Strickland and the reasonable probability of a different outcome is a very insignificant difference. It's a very small and slight difference and matters only in the rarest of cases. This is one it matters in, right, because we've already re-amended for this. I think it is not one that it matters in. You mean in the end? In the end. It mattered in the previous opinion, right? Well, it did matter in the previous opinion, and I recall the exchange we had at the time, Judge, but I still disagree that the Iowa court was applying an incorrect standard. I think there are two standards to talk about here. One is the outcome determinative standard, the sentence you quoted from that section where the court said the result would have been different. Then there's the standard that the Iowa court always cites, which you would find in Ledesma v. State, which in fact is cited in the Court of Appeals decision in this case. When you talk about the scope of review, and you highlighted that particular provision in the previous decision, the court in its scope of review cited Ledesma v. State. Ledesma is an extensive discussion of the Strickland standard. Ledesma reaffirmed that Iowa was going to apply the Strickland standard in all cases. So what I would assert is perhaps not as quite accurate in this court's original decision, is it's true the court never cited Strickland in this post-conviction decision, but it did cite Ledesma, and Ledesma at length discusses the Strickland standard. What is different about Iowa, and I must concede what is different about Iowa, and Ledesma points this out, that Iowa says you must prove both prongs of the Strickland standard by a preponderance of the evidence. What I would submit to this court is that's a different question than what the court was addressing about this particular sentence in this particular section of the opinion, where I submit to the court shorthand was being used, because the court had explained that they were applying the law from Ledesma. They had explained in the prior section four times that they were looking for a reasonable probability of a different outcome. Only in this final section that dealt with this particular issue did they resort to the shorthand, and they did that when unfortunately quoting the district court opinion in this case. So I think the court got a little bit lazy and just said, well, we agree with the district court's determination on the application of the standard, and forgot about the fact that they had already cited Ledesma, and they had already cited the reasonable probability of a different result, and they understood what was the appropriate standard to be applied. Now the question then becomes is Iowa's standard a reasonable probability of a different outcome proven by a preponderance of the evidence in contradiction of Strickland? And I would submit that we don't have an answer from the United States Supreme Court on that question yet, but if, as they said in Strickland, that all these slight variations on the prejudice standard that existed prior to Strickland were not different, and that only the outcome determinative standard was at odds with the Strickland standard, then I would submit the Iowa standard is not at odds with the Strickland standard. I didn't get a chance to look before coming here for oral argument, but it seems to me the Supreme Court has discussed what the but-for standard amounts to, especially in civil cases and especially in cases involving discrimination. Hasn't the Supreme Court spoken out on really what a but-for standard of proof is? Well, I mean I think the traditional understanding of the more likely than not, I mean that's the kind of standard that's applied before Strickland and the standard that ultimately was rejected. Reasonable probability that but-for counsels on professional errors and would seem to think that that's some sort of an evidentiary test in and of itself. Well, what the court says in Strickland that that language means substantial, not conceivable, that it has to be substantially likely that there's a reasonable probability of different outcome. Higher than a preponderance standard? Insignificantly so would be my response. Clear and convincing? What are you saying? I would say it would not rise to that level. Preponderance is normally viewed as a 51% chance of a different result. 50.1%. 50.1%. And they say that the reasonable likelihood of a different outcome is slightly less than that particular standard, so slightly that it does not make a difference in most cases. So the reasonable likelihood of a different outcome is that 50.001%. I mean it becomes difficult when you're talking about these standards and trying to apply mathematical precision to them, but ultimately I would submit to you that it's not a standard that differs so significantly that it's going to result in a different decision in most cases, applying either standard. And then I think it becomes even more difficult when you apply the Iowa standard and say is there a reasonable probability, or excuse me, is it more likely than not that there's a reasonable probability that the result would be different? I think that standard is so insignificantly different from the Strickland standard that it doesn't violate, and at least the Supreme Court has never said, that it violates the standard promulgated in Strickland. Isn't Mr. Cole correct, though, that this is a pretty heavy-duty sentence for the evidence that we have in this case? I guess my answer to that would be no. I mean simply touching the genitals of a child in Iowa gets you 25 years, period. Simply touching the genitals with sexual intent, sexual purpose is the language, results in a sentence of 25 years. So if the jury was going to believe that that's what happened in this case, which they apparently did, you get 25 years. So I think it's incorrect to say that the jury couldn't give somebody 25 years for a single act that was so slight. When you said jury give 25 years, does Iowa have jury sentencing? No, excuse me, I don't mean that. Missouri does have sentencing for first-time offenders. Iowa has indeterminate sentencing, and that sentence is required in every case with a jury. That's done by judge. You have judge sentencing. You have judge sentencing, yes. And in this particular case, there's no discretion in the court. The court must give the sentence that's required by law, and that sentence for sexual touching of the genitals of a child is 25 years. Now, that gets to a different issue, I think, Judge Beam, that you're talking about, and that is what do we review when we're talking about the Strickland Standard and the evidence in a particular case? And I would submit to the court that we have to be careful not to do a sufficiency review, that the courts have found the evidence in this case sufficient. It's easy in most cases, I suppose, we go to this kind of overwhelming evidence standard and say, if we have overwhelming evidence, the conviction will be upheld. If we don't have overwhelming evidence, we view it maybe differently. I would submit to the court it's more appropriate to look at the nature of the claimed error and how that error impacted the evidence that the jury must have relied upon. Because as Strickland says, some errors will go to all of the evidence that's been presented and taint the trial. Some errors are isolated and independent and won't go to the whole of the case. In this particular instance, I suggested that it's the latter, that it's one of those errors that occurred that doesn't go to the whole of the case, and it wasn't an issue in the other witness's testimony. Therefore, it could not have affected the outcome. It would not have reasonably likely resulted in a different outcome. There are essentially three types of evidence that were offered in this case, and those are the statements of MP, the child herself, the observations of sexual contact by witnesses who were present at the time, and then the inferences that the jury was asked to take based upon the sexual behavior of the children. Whether the defendant was sexually aggressive toward adults is not an issue that was touched upon by those main witnesses that gave the kind of corpus delecti of the crime. But I thought he testified that when he showered with these girls that he was sexually activated because he was thinking of this wife who called him too sexually aggressive to live with or something like that. So does that actually follow from what you just said? Well, I would characterize the evidence a little bit differently. The Iowa court, of course, found that the testimony about showers and sexual activity in the showers was admissible evidence. The objectionable evidence was the assertion that he had forced himself on her when she was not in the mood to have sex or didn't feel well. And that independent 404B evidence was what the court had trouble with. And I don't think that goes at all to the testimony that the other people offered about the nature of his relationship with the children. If we're talking about his nature of relationship... Yes, I'm talking about the evidence of the witnesses against him, those accusers that said that he had committed these particular acts. And then coupling it with this aggressiveness with his... But I don't think you have to couple it, and I don't think it was ever coupled by those witnesses, and that would be my exact point. The witnesses who were the primary witnesses about the culpable behavior did not talk about force and did not talk about aggression. In fact, Dana Willey, the first witness that testified for the defendant's girlfriend, she testified about the really good relationship that he had with the children. But in that relationship, she still saw boundaries and barriers that were crossed. Even the defendant's expert says that sexual behavior against children is not necessarily forceful behavior, and it's not behavior that the children would recognize as hurtful. So when you talk about the testimony that they offered, I don't think it's impacted at all by the testimony of Shelley Piner. In fact, I would assert to this court that the testimony of Shelley Piner is fairly insignificant. She doesn't have a lot to offer that hasn't already been offered by other witnesses. And even this aggressive behavior, sexually aggressive behavior, if you want to look at that, Dana Willey essentially testified to the same thing. That information was already in the record as it related to adult relationships. She testified that when the phone sex occurred, she would tell him over and over to stop, and he was insistent upon continuing. So that he had this kind of boorish relationship with adults was already in the record. So I don't see how it being offered once again, in the context that it was offered during redirect after her credibility had been significantly attacked, really had that much of an impact on the jury. Even when you talk about Heidi Butters' testimony, the second witness, or Cammie Butters, the third witness, they're not talking about forcible acts perpetrated against the children. They're talking about inappropriate contact in the context of what otherwise appears to be a pretty loving relationship between the defendant and his children.  Nor was it at the core of the evidence offered by the prosecution. But really, isn't that beside the point? Because don't you agree that you could have some inadmissible, bad act kind of evidence that could get into a trial that could so prejudice a defendant, could so inflame a jury as to make a real difference? I mean, I don't understand the argument here to be that this ex-wife's testimony was in the same nature as the allegations against the appellant with respect to the child. I thought it was more of this is a bad sexual actor kind of evidence, and hence he must be guilty of something. No, I agree with that statement in general, that some kinds of bad acts evidence can so taint the entire process that our confidence in the outcome is going to be undermined. I'm just asserting in the way that this case was tried, this isn't one of those instances. Because the fact that the defendant was boorish with his behavior involving adults is already in the record before Shelly Piner testifies. Shelly Piner offers it, as the defendant asserts, as an embittered ex-wife. And what the district court found was the jury would certainly have understood that. Did the defense counsel object to the ex-girlfriend's testimony? No, no. The ex-girlfriend, when she testified about his insistence upon talking to her, having the sexual conversation on the phone while the child was present, if there were objections, it wasn't consistent because the testimony was, it happened more than once in the same kind of exchange, but it was repeated testimony. In your mind, this was just routine 404B kind of evidence of previous bad acts. Is that right? It is routine 404B evidence, and I have to concede that in Iowa, our 404B, 5.404B is a rule of exclusion, which is why the court likely found that in this particular instance that evidence needed to be excluded. But I would reiterate for this court, that's not, as the counsel says, a finding of ineffective assistance. It's a finding of a breach of a duty. We still have to get to prejudice to have ineffective assistance. And in this particular instance, I would assert that it didn't rise to that level. Thank you. Rebuttal. Your Honors, it's precisely because force had nothing to do with this case that it only underscores counsel's failure to object to this inadmissible, sexually violent evidence. He concedes, and I think he should, that the court is not here to determine in the first instance whether this evidence was admissible or not. The court is not really here to even establish the deficient performance or address the deficient performance prong. The state post-conviction trial court, as well as post-conviction appeal court, basically conceded as much. So you can defer to the state courts. And then, finally, you need to defer to the state courts' characterization of this evidence as sexually violent because you're sitting in habeas. So the court should defer to the finding of sexual violence. The state court ruling in state. Are you saying we have to defer? Yes. Under 2254E2, this court is to presume state court findings of fact to be correct. And this is a characterization of the evidence that was given in the state court. So this is going to be a very unusual case that probably won't repeat itself again in this particular context. The state court could have said, well, it's just not admissible as a matter of state court law, in which case this court would be bound by that. But they found that it was inadmissible. And the state is correct. Your site presumed, and then there's also some additional language. Unless it's rebutted by clear and convincing evidence. And a few other. Yeah, which has not been rebutted in this particular case. So we have a situation where the state court agreed it should have been admissible, agreed that it shouldn't have come in, agreed that it should have nothing to do with this case. And then if you look at the Bolander case, of course there was conflicting evidence. But that's exactly the grant of habeas that occurred in Bolander, where you have a closed case, you have a finding of deficient performance. The only thing the court should not agree with is the incorrect standard of prejudice that was used by the court. And if you look at that, they were not talking about facts. They were talking about outcome determination as preponderance. That was extensively abriefed in the first case. This court should defer to that previous panel. And this court should find that ineffectiveness occurred and that we should get habeas relief in a new trial. Is there any other questions that the court has? Thank you very much. Thank you for your argument, counsel. The case is submitted, and that concludes our docket for today. Thank you. And the court will be in recess, this division of the court, until Wednesday.